SAMUEL GERRIG, trustee, *vs.* SUMNER SNEIRSON.

Suffolk.    April 4, 1962. — June 11, 1962.

Present: WILKINS, C.J., WHITTEMORE, CUTTER, KIRK, & SPIEGEL, JJ.

*Contract,* Construction, Separation agreement.   *Divorce,* Separation agreement.   *Marriage,* Validity.

A marriage in another State between residents of this Commonwealth was void under G. L. c. 207, § 10, where one party was prohibited from marrying then by c. 208, § 24, and the other party "entered into this marriage . . . [in the other State] for the express purpose of avoiding the disability of remarriage placed on" the first party and both parties "never intended to live" in the other State.   [519–520]

Under a separation agreement between husband and wife and a trustee providing that if the wife obtained a divorce the husband would pay her for her support a certain sum weekly until her "remarriage," his obligation to make such payments following their divorce terminated, in the circumstances, when she in another State entered into a purported marriage with another man, even though it was prohibited by G. L. c. 208, § 24, by reason of the other man's having been divorced less than two years before and was void under c. 207, § 10.   [520–521]

CONTRACT.   Writ in the Superior Court dated July 21, 1959.

The action was heard by *Rose,* J.

*Louis Kobrin (Simon B. Stein* with him) for the defendant.

*Samuel Leader* for the plaintiff.

WILKINS, C.J.   On June 20, 1957, a written contract with trustees was made by Claire J. Sneirson and her husband, the defendant, who were living apart.   The contract recited that she had brought a divorce libel in the Probate Court for Middlesex County, and contained the provision which now presents an underlying issue of interpretation: "Contingent upon the procuring by the wife of an absolute decree of divorce the husband agrees as follows: (a) To pay to the wife the sum of one hundred dollars ($100) per week as alimony for her support for a period of twenty (20) years from the date of the decree absolute of divorce, or until the remarriage of the wife, whichever comes first

. . . ." Also on June 20, 1957, a decree nisi was entered which became absolute on December 21, 1957. No reference to the contract was made in the decree. See *Schillander* v. *Schillander,* 307 Mass. 96, 98; *Whitney* v. *Whitney,* 316 Mass. 367, 371; *Freeman* v. *Sieve,* 323 Mass. 652, 655–657. Compare *Fabrizio* v. *Fabrizio,* 316 Mass. 343, 346. In this action of contract by the wife's trustee, count 1 is to recover the $100 weekly payments for the period from July 10, 1958, to July 21, 1959, the date of the writ, and count 3 is for attorney's fees. Count 2 was waived. The judge filed findings of fact and rulings of law. He found for the plaintiff in the sum of $5,200 on count 1 and in the sum of $500 on count 3. The defendant excepted to various rulings.

Among the judge's findings were these. On January 13, 1958, Claire, who was living in Newton, went to Rhode Island and was there married to one Craft, also of Newton. On May 11, 1956, Craft's wife had obtained in this Commonwealth a decree nisi of divorce, which had become absolute on November 13, 1956. By G. L. c. 208, § 24 (as amended through St. 1943, c. 168, § 1), Craft was prohibited from marrying for two years. After the marriage ceremony in Rhode Island Craft and Claire returned to Newton, where they resided as husband and wife until their separation on or about October 31, 1958. Except for one mortgage payment Craft never supported her. On August 4, 1958, the defendant sued Claire in the Superior Court, Middlesex County, for the return of payments made between the date of her marriage to Craft and the date when the defendant became aware of that fact. On October 8, 1958, an agreement for judgment for $2,600 was filed, and on December 9, 1959, the execution was returned to court indorsed "paid in full." In the meantime on July 21, 1958, Claire filed in the Probate Court for Middlesex County, a petition for annulment of her marriage to Craft, alleging that at the time of the marriage "a former marriage was still in legal effect." The petition was dismissed upon her motion on November 18, 1960, after the close of the hearing in the Superior Court in the case at bar.

The judge found that Claire ''entered into this marriage in Rhode Island for the express purpose of avoiding the disability of remarriage placed on Craft, and that they never intended to live in Rhode Island.'' In view of this finding the judge correctly ruled that this marriage was void under the law of this Commonwealth. G. L. (Ter. Ed.) c. 207, § 10. *Royal* v. *Royal,* 324 Mass. 613, 615–616. *Fraser* v. *Fraser,* 336 Mass. 597, 600. *Van Bibber's Case,* 343 Mass. 443, 452–453. See *Levanosky* v. *Levanosky,* 311 Mass. 638, 641.

The judge also ruled that the marriage ceremony was not the condition contemplated in the trust agreement as terminating the defendant's obligation to pay $100 a week, and to this the defendant excepted. The judge apparently was of opinion that Claire was entitled to payments even while living with Craft, for there was a finding that she lived with him until about October 31, 1958,[1] and recovery was allowed from July 10, 1958.

We do not reach this question because we are of opinion that the marriage ceremony with Craft in itself satisfied the condition in the contract. Claire's own testimony makes it clear that she and Craft both actively participated in the illegal marriage by making false statements to the clerk in the marriage bureau. The conduct of each would preclude either from obtaining a decree of nullity in this Commonwealth. *Ewald* v. *Ewald,* 219 Mass. 111, 113. *Belcher* v. *Belcher,* 324 Mass. 757. *Korostynski* v. *Korostynski,* 328 Mass. 6. The same facts would preclude her from maintaining a petition for separate support from Craft. *Shain* v. *Shain,* 324 Mass. 603, 604, cert. den. 338 U. S. 954. *Boltz* v. *Boltz,* 325 Mass. 726, 728.

The plaintiff supports his argument by quoting from *Southworth* v. *Treadwell,* 168 Mass. 511, 513, where a revision of a decree for alimony was upheld on the ground that the wife's remarriage gave her ''the right to be supported by another man.'' But we are of opinion that the

[1] Her own testimony was that they separated on or about October 31, 1958, and also that she was living with him on November 18, 1958.

right to be so supported is not the only consideration as affecting interpretation of the contract before us, a party to which should be entitled to rely upon the appearance of things. Where the wife entered into another apparent marriage, the contract should not be read as contemplating an intermittent "alimony" obligation subject to reinstatement by her going beneath the surface and disclosing circumstances to which the defendant was in no way privy. Where the defendant has no reasonable means of discovering such circumstances, the contract cannot be interpreted as contemplating that he can act only at peril in ordering his own affairs in reliance on appearances. Compare *Robbins* v. *Robbins,* 343 Mass. 247, 252. Particularly should this be so where those circumstances include her purpose in going to Rhode Island upon which she now relies as preventing validation of the marriage and support from the second husband. See G. L. (Ter. Ed.) c. 207, § 6; *Vital* v. *Vital,* 319 Mass. 185, 187–189; *Tierney* v. *Tierney,* 332 Mass. 414, 415.

Our conclusion finds support in *Sefton* v. *Sefton,* 45 Cal. 2d 872, 876–877, *Lehmann* v. *Lehmann,* 225 Ill. App. 513, 522, *Gaines* v. *Jacobsen,* 308 N. Y. 218, 223, and *Spatz* v. *Spatz,* 10 Misc. 2d (N. Y.) 1. See 48 A. L. R. 2d 329–332. Compare *Sleicher* v. *Sleicher,* 251 N. Y. 366.

There are other obstacles which would have to be cleared away before we could uphold a right to recover on the part of the plaintiff. Among these are the validity of the marriage in Rhode Island which is regular on the face of the public records and has been allowed to stand (see *Murphy* v. *Murphy,* 249 Mass. 552, 554); what effect Rhode Island courts would give to the prohibition against remarriage in G. L. c. 208, § 24; and whether the doctrine of *Ewald* v. *Ewald,* 219 Mass. 111, 113, and similar cases, is an absolute barrier to an action on the contract.

Since there can be no recovery on count 1, under the terms of the contract there can be no recovery on count 3 for counsel fees.

*Exceptions sustained.*
*Judgment for the defendant.*